[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action was commenced by a complaint filed by the plaintiff wife dated March 26, 1996 seeking a dissolution of her marriage as well as alimony and an equitable distribution of marital assets. The defendant husband filed an answer and a cross complaint in which he also sought a dissolution of the marriage as well as alimony and an equitable distribution of marital assets. Neither party sought attorney fees in their pleadings.
The defendant also impleaded Marie Duphiney, the plaintiff's sister, to whom the defendant alleges the plaintiff conveyed, as a gift, a one-half interest in the marital residence. The third party complaint asked to have the conveyance to Ms. Duphiney's set aside and rescinded, alleging that she was holding title as an agent of the plaintiff.
On September 15, 1997, following a trial on the issues raised by the pleadings, the Court (Klaczak, J.) entered ajudgement dissolving the marriage as well as a judgement in favor of the defendant, Marie Duphiney, as to the third party complaint. At the same time the Court entered orders regarding the distribution of the marital assets.
The judgement of the trial court concerning the distribution of marital assets was appealed by the defendant. The Appellate Court ruled that the trial court had not property considered the plaintiffs fully funded 401(k) pension fund as a marital asset and reversed the judgement of the trial court only to the orders involving the distribution of the marital assets and remanded the case for a new trial on all financial matters. "The judgement is reversed as to the financial orders only and the case is remanded for a new hearing on all financial orders." Stamp v. Visconti,51 Conn. App. 84 (1998). The September 15, 1997 judgement of the trial court dissolving the marriage of the parties as well as the judgement in favor of the defendant on the third party complaint were not reversed by the Appellate Court and thus remain valid CT Page 6922 judgements.
A new hearing on the issues relating to an equitable distribution of the marital assets was scheduled by the trial court for May 13, 1999. At that hearing the attorneys for the plaintiff and the defendant proposed that the issues regarding the distribution of the marital assets be decided by the court based upon the evidence contained in the record from the original trial as well as briefs to be submitted by the parties. The court agreed.
The Court has carefully reviewed and considered the entire record, including the court file, the exhibits, the transcript of the earlier trial, and the briefs and stipulation submitted by the parties. Based upon that evidence the court finds the following relevant facts to have been proven.
The parties were intermarried in Glastonbury, Connecticut on November 6, 1982. There are no minor children who are issue of this marriage nor has any child been born of the plaintiff wife since the date of the marriage. Neither party has received governmental assistance for support.
The plaintiff is a high school graduate who was previously married in 1957. During her first marriage the plaintiff and her husband bought a family home located at 21 Abby Drive, Hebron, Connecticut. At the time of their divorce in 1980 the Court (W. Graham, J) assessed the value of the property at approximately $60,000 with a mortgage of approximately $7500. The Court awarded the house jointly to the plaintiff and her former husband. When the plaintiff married the defendant in 1982, her share in the equity in the house at 21 Abby Drive was approximately $26,250.
After their marriage in 1982 the parties obtained a $24,000 second mortgage on the Abby Drive property. They used $20,000 of the loan to purchase the one-half interest in the property from the plaintiffs first husband. Both parties signed the promissory note for the mortgage but the defendant's name was never added to the deed. The parties decided that it would not be prudent to put the house in the defendant's name because of his prior financial problems and his continuing financial difficulties with the Internal Revenue Service. Indeed, throughout the fourteen years of this marriage the parties filed separate federal income tax returns even though this practice resulted in the parties being required to pay more in federal income taxes than was necessary. CT Page 6923 The evidence indicates that this was done deliberately in order to protect the marital residence from possible attachment by the Internal Revenue Service to satisfy' debts owed to the IRS by the defendant. In 1987 the parties borrowed an additional $35,000 for the purpose of making improvements to the house. In 1991 they refinanced the mortgage and obtained a new mortgage loan of $86,000. of this sum $64,500 was used to retire existing mortgages and $19,500 was used to pay off credit card debts. The parties have stipulated that as of the date of the judgement of dissolution the value of the marital home was $142,000. After subtracting a mortgage balance of about $83,800, the court finds that the total equity in the property as of the date of dissolution was approximately $58,200.
It is clear from the evidence that both parties invested considerable time, effort and money in making substantial renovations to the house, thus increasing its value. Most of the work was done by the defendant, but it was clearly a joint effort. Neither party could have obtained the funds nor done the work needed to enhance the value of the property without the assistance of the other.
In 1991 the plaintiff quitclaimed ownership of her property located at 21 Abby Drive, Hebron, Connecticut to herself and to her sister, Marie Duphiney. (Exhibit 4) The evidence is inconclusive as to whether the conveyance to Ms. Duphiney was a gift or was based upon past consideration; however, the court does not find from the evidence that said conveyance was fraudulent or should be rescinded.
All other things being equal, this was apparently a happy, satisfying marriage. There is no evidence of rancor between the parties. The plaintiff and the defendant apparently loved each other during the thirteen years they lived together. Both parties have had some health problems. The plaintiff-wife, now age 59, was diagnosed with a lung tumor in 1989. The lower lobe of her left lung was surgically removed at that time. She apparently has made a full recovery from that condition, but she currently suffers from osteoporosis, as well as anxiety and stress for which she takes prescribed medication. The defendant-husband, now age 58, had coronary bypass surgery in 1996, from which he has apparently fully recovered.
The defendant is a salesman who has maintained employment throughout most of the marriage. During the years immediately CT Page 6924 preceding the dissolution of this marriage, he was earning well in excess of $50,000 per year. The plaintiff has worked on a part time basis in a physician's office for more than twenty-four years. During the early years of the marriage the plaintiff earned approximately $12,000 to $14,000 per year. More recently she was earning approximately $22,000 to $24,000 per year. The Court finds that the defendant's wage history as well as his future earnings potential have been and continue to be significantly greater than those of the plaintiff.
The demise of this marriage is primarily the result of financial disorder and stress brought about by excessive spending and lack of fiscal restraint and discipline by both parties. Even though the defendant had gone through bankruptcy shortly before his marriage to the plaintiff, he apparently did not gain a sense of fiscal understanding and restraint needed to avoid spending beyond his means. While neither party was fiscally prudent, the defendant's continuing difficulties with the Internal Revenue Service, his gambling habits, and his lack of fiscal discipline weigh especially heavily as the cause of the failure of the marriage.
In addition to the house and property at 21 Abby Drive, Hebron, Connecticut, the only other marital asset of any significance is the plaintiffs 401(k) retirement account. This fund was fully funded by the plaintiffs employer and is considered to be deferred compensation. As of the date of the marriage the value of the account was approximately $5700. (Exhibit A) As of the date of the dissolution the 401(k) account was valued at approximately $130,000. (Exhibit I) This was an increase in value of approximately $124,000 over the course of the marriage. During the pendency of this action, $5,000 of the 401(k) fund was transferred to the defendant by pendente lite order of the court.
After taking into consideration and carefully weighing all of the criteria and factors set forth in § 46b-62, § 46b-81
and § 46b-82, and applying the same to the evidence, the Court enters the following orders.
1. Distribution of marital assets.[1]
A. While the plaintiff had the right to convey a portion of her sole ownership of the property located at 21 Abby Drive to her sister, the defendant is nevertheless entitled to a fair CT Page 6925 share of the equity in the marital property that was achieved as the result of his contribution and efforts during the course of the marriage. Given the fact the plaintiff transferred one-half of the ownership of this property to her sister, it is not practical nor realistically feasible to order the property sold and the equity distributed to the parties.
At the time the parties intermarried the plaintiffs equity in the 21 Abby Drive property was valued at approximately $26,000. As of the date of the dissolution the equity in this property had increased to $58,200. This is a net increase in equity of approximately $32,000. Accordingly, the Court awards the defendant the sum of $16,000, which is approximately one-half of the increase in the equity in the marital home achieved during the marriage. The plaintiffs remaining ownership interest in the marital residence is assigned exclusively to the plaintiff who shall hold the defendant harmless on any mortgage debt on the property.
B. The Court also finds that the defendant is entitled to share in the plaintiffs 401(k) retirement account which is a marital asset in the form of deferred compensation earned by the plaintiff. As previously determined, the increase in value of this account between the date of the marriage and the date of the dissolution is approximately $125,000. After taking into consideration all of the statutory criteria, including but not limited to the needs and resources of the parties, the court awards the defendant the sum of $25,000 from the plaintiffs 401 (k) account. This amounts to approximately 20% of the increase in value of plaintiffs 401(k) retirement account during the course of the marriage. The balance of the 401(k) fund is assigned to the plaintiff.
C. In order to comply with the above orders of the Court, the plaintiff is ordered to pay to the defendant the total sum of $36,000 [$16,000 + ($25,000 — $5,000 pendente lite distribution to the defendant)] from her 401(k) fund by means of a Qualified Domestic Relations Order, or its equivalent, within 30 days of the date of this judgement.
2. Neither party is awarded alimony.
3. The defendant's request that the court order the parties to back-file their federal income tax returns jointly in lieu of the individual tax returns filed by the parties over the past CT Page 6926 years to the extent that the IRS will permit such amended filings is denied.
It was the defendant's considered decision to file individual tax returns during the course of the marriage for the purpose of protecting the marital home from possible attachment by the IRS. There is no compelling or equitable reason to reverse the defendant's earlier course of action which benefitted [benefited] both parties at the time.
4. The court finds that awarding attorney's fees to either party would undermine the totality of the financial awards ordered by the court in this matter. Accordingly, it is the order of the court that the parties shall be solely responsible for their own attorney's fees.
5. Each party shall be solely responsible for his-and her debts and liabilities contained in their financial affidavits.
6. With the exception of the funds ordered to be transferred to the defendant from the plaintiffs 401(k) account, the parties are assigned those assets listed in their respective financial affidavits which have not previously been distributed by agreement.
Plaintiff's attorney is ordered to prepare and submit to the court a judgement file and the QDRO within 30 days of the date of this judgement. Said judgement file is to be signed by the attorneys for both parties.
Terence A. Sullivan, Superior Court Judge