[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Our courts have frequently described a judgment in a complicated matrimonial case as a "carefully crafted mosaic." Krafick v. Krafick,234 Conn. 783, 806, 663 A.2d 365 (1995); Connecticut National Bank v.Giacomi, 233 Conn. 304, 340, 659 A.2d 1166 (1995); Fahy v. Fahy,227 Conn. 505, 515, 630 A.2d 1328 (1993); Sunbury v. Sunbury, 210 Conn. 170,175, 553 A.2d 612 (1989); Papa v. Papa, 55 Conn. App. 47, 51, 737 A.2d 953
(1999); Dietter v. Dietter, 54 Conn. App. 481, 497, 737 A.2d 926 (1999);Stamp v. Visconti, 51 Conn. App. 84, 87, 719 A.2d 1223 (1998); Tyc v.Tyc, 40 Conn. App. 562, 569, 672 A.2d 526 (1996); Michel v. Michel,31 Conn. App. 338, 341, 624 A.2d 914 (1993); Mulholland v. Mulholland,26 Conn. App. 585, 590, 602 A.2d 1054 (1992); Ehrenkranz v. Ehrenkranz,2 Conn. App. 416, 424, 479 A.2d 826 (1984). The Department of Social Services apparently views such a judgment as a faceless block of precast concrete. State v. Rodriguez, 27 Conn. App. 307, 314, 606 A.2d 22 (1992);State v. Tulli, 14 Conn. App. 356, 362, 541 A.2d 515 (1988); State v.Ralston, 7 Conn. App. 660, 682, 510 A.2d 1346 (1986). This exceptionally complicated matter comes to this court on the plaintiff's amended complaint and, incredibly, a delinquency notice and claim, to which the CT Page 5085-ie plaintiff filed a timely objection, which he styled "motion to void action of family services and claim for trial". For the reasons hereinafter stated, this court grants the plaintiff's objection to the notice and claim, dismisses that procedure for want of jurisdiction, vacates any income withholding order issued by virtue thereof and refers this case to the Superior Court for trial and all other proceedings.
The following outline of the basic history is not comprehensive but will suffice for purposes of this decision. The parties to this case intermarried in Rowayton, Connecticut in 1972. There are two children issue of the marriage, Alison A. Wayne, born October 7, 1982 and Natalie E. Wayne, born May 15, 1985. In 1989 the present defendant wife filed an action in the Supreme Court of the State of New York seeking a dissolution of the marriage. The husband did not file an appearance in that case but filed a written waiver of his right to answer and admitting to service. The parties executed a comprehensive forty-six page separation agreement on September 18, 1989. The New York court dissolved the marriage[1] on November 27, 1989, incorporating by reference the terms of the separation agreement and a separate ratification document but specifically did not merge the agreement into the judgment.
In autumn, 1994, the wife attempted to domesticate the New York judgment pursuant to General Statutes § 46b-70 et. seq. The matter was filed in the Superior Court at Hanford and assigned docket number NY94-0538075. The wife also filed an application for a contempt citation against the husband claiming inter alia refusal of the husband to pay child support or to comply with required contributions to day care expenses and unreimbursed medical and dental costs. The husband filed a motion to dismiss. He argued that since he had not filed an appearance in the New York matter, under the language of the statute and court holdings in Mirabel v. Mirabel, 30 Conn. App. 821, 622 A.2d 1037 (1993) andMorabito v. Wachsman, 191 Conn. 92, 463 A.2d 593 (1983) the judgment did not qualify as a foreign matrimonial judgment and our Superior Court lacked subject matter jurisdiction under General Statutes § 46b-71. On March 8, 1995, the action was dismissed by the Court, Santos, J., for want of subject matter jurisdiction. Further details of that file and Judge Santos' decision are not available because as a dismissed case, the contents of the court file subsequently were destroyed[2].
Meanwhile, on October 24, 1994, the plaintiff husband filed the present action in the Superior Court for the judicial district of Stamford. The case was assigned docket number FA94-0141615. The complaint consisted of one count of some seventeen numbered paragraphs claiming the agreements are unconscionable, and violative of the public policy of Connecticut, CT Page 5085-if that he entered into the agreements under duress and that the defendant wife has breached the agreements on several occasions. The plaintiff seeks nullification of the separation agreements; modification or reformation of the agreement; specific performance and such other relief as the Court deems just and proper. On May 1, 1995, on motion of the defendant, the Court, Ryan, J., ordered the matter transferred to the Hanford Judicial District.
The defendant filed a five count counterclaim alleging breach of the agreement by the plaintiff, detrimental reliance, emotional distress and breach of the covenant of good faith and fair dealing. The defendant is seeking enforcement of the agreements, money damages, punitive damages, costs, attorney's fees and such other relief as to which law or equity pertain.
What then followed was a sequence of over fifty motions and pleadings. Many of these motions were zealously contested over the ensuing five years before several Superior Court judges. Although the complaint and counterclaim set out what is essentially a civil action in contract and tort, many facets of the matrimonial dispute were addressed and the hearings were primarily although not exclusively, heard by judges assigned to the family division of the court. While it is unnecessary at this time to detail these battles, several particular aspects are of interest.
There is an undated file note indicating that the matter "is deemed to have gone to judgment". The case detail computer print indicates document number[3] 125.00 as a judgment by the Court, Barall, J., without trial dated May 10, 1995. Other than the aforesaid note, handwritten on the inside of the file cover, there is no #125.00 in the file (or for that matter #118 through #124). The file does not reveal the basis upon which the court "deemed" judgment to have entered or the contents of the judgment. It does reveal substantial subsequent activity regarding visitation and custody issues. An attorney was appointed for the minor children.
On January its, 1997, Judge Barall approved an agreement apparently proffered by the children's attorney by which the primary residence of the children would be with the plaintiff father. The agreement also "suspended" child support payments. This court found no subsequent modification of these orders.
However, on September 2, 1997 the defendant mother filed a motion for support (#145.00, designated pendente lite on the computer print). The CT Page 5085-ig plaintiff's counsel filed a motion to dismiss both the motion for support and the defendant's counterclaim claiming once again that the New York matrimonial judgment did not qualify as a foreign matrimonial judgment and hence could not be "registered"[4] under General Statutes §46b-71. This was a curious response because nowhere in the defendant's counterclaim or motion for support did she invoke General Statutes §46b-71 or 46b-70. The motion for support contained no statutory reference. The only statute referenced in the counterclaim was General Statutes § 52-607 which merely preserves the right of a judgment creditor to bring an action on the judgment[5].
The contested motion to dismiss became even more anomalous as the parties filed briefs and moved to oral argument. Both parties recognized that the present action is primarily a contracts action over which the Superior Court clearly has subject matter jurisdiction. See plaintiff's complaint (no document number assigned) and amended complaint (#153.00), defendant's answer (#106.00) and counterclaim (#105.00), defendant's memorandum of law dated January 15, 1998 (#150.00). Secondly it is clear from a review of the pleadings, orders and briefs in the file that both parties relied on numerous provisions of family statutes not dependent on the domestication of foreign matrimonial judgment provisions. The plaintiff invoked General Statutes § 46b-86, 46b-66 and 46b-56 in his complaint. Moreover, as the defendant correctly points out in her brief, the plaintiff chose to designate the case as a family matter when on his summons he filled in "F-90" as the case type — the "F" code indicates a designation as a family matter. Both parties have filed numerous motions and pleadings invoking aspects of the court's family jurisdiction. See eg. plaintiff's motion for order of visitation #114.00, defendant's motion to compel return of children #127.00, plaintiff's ex parte motion to compel family relations meeting #128.00, motion for appointment of counsel for minor children #131.00, motion for immediate change of custody #132.00, motion for contempt #138.00, motion for contempt #142.00.
Both parties have correctly pointed out, albeit obliquely, that the Superior Court may now assert jurisdiction over the support aspects of this case under UIFSA. See defendant's memorandum of law #150 p. 5-6, plaintiff's amended complaint #153.00 subpar. 6a. As both parties recognize, unlike URESA in which the Family Support Magistrate Division had exclusive jurisdiction, under UIFSA both the Family Support Magistrate Division and the Superior Court judges are designated "tribunals" and hence have concurrent jurisdiction. General Statutes § 46b-212b. CT Page 5085-ih
Finally, neither party invoked § 46b-70. In fact, paragraph 8 of the plaintiff's complaint alleges: "The order of dissolution of marriage incorporating the agreements does not qualify as a `foreign matrimonial judgment' capable of registration [sic] with a court of Connecticut according to C.G.S.A. [sic] § 46b-70." This allegation was admitted
in the defendant's answer.
The motion to dismiss was denied by the court, Dranginis, J. #146.00. Judge Dranginis held that the Superior Court "certainly" has subject matter jurisdiction over the contract claims. She cited New York law to the effect that where a matrimonial separation agreement is not merged with the judgment, as in the present case, the agreement retains "contractual significance". Minarovich v. Sobala, 121 App.Div.2d 701, 702,504 N.Y.S.2d 143 (1986); Boden v. Boden, 42 N.Y.2d 210, 212-13,366 N.E.2d 791, 397 N.Y.S.2d 701 (1977). Our courts have recognized this statement of the law. Evans v. Evans, 35 Conn. App. 246, 249, 644 A.2d 1317
(1994). Although the judge recognized that the defendant had not in fact invoked General Statutes § 46b-70 and notwithstanding that neither the New York judgment nor the agreements had been filed in this action and despite the prior contrary ruling of Judge Santos, the court also held that "it has subject matter jurisdiction over the prayer for relief seeking to enforce the agreements as set forth in the counterclaim under the statutes, General Statutes § 46b-70 et seq."
It is in this procedural context that the Department of Social Services filed its delinquency notice in June, 1999. In stark contrast to the complicated, convoluted history of the case, the notice is stunningly simplistic. It simply states without evidence, authority or a court finding, that there exists a "delinquency" of $39,260.41, and purports to impose an immediate income withholding. Although a dozen Superior Court judges, three Family Support Magistrates, over fifty pleadings, dozens of hearings, several Family Relations referrals and five years of contested litigation have been unable to unravel the complexities of this case, the Department of Social Services proposes to do so with one sheet of paper that couldn't have taken more than ten minutes to prepare!
The delinquency notice is provided by statute to initiate a limited and specialized procedure the sole purpose of which is to establish an income withholding order where the court previously neglected to do so. General Statutes § 52-362 (c) and (e). The General Assembly did not design the procedure to establish an alternative dispute resolution system by administrative fiat. The Department of Social Services has been repeatedly rebuked for overstepping its authority in its use of this CT Page 5085-ii procedure[6]. This case provides another example.
All aspects of the support obligations in this case remain contested. The plaintiff's complaint and amended complaint as well as the defendant's motion for support have not yet gone to trial. Neither have the numerous contract and tort claims. It is not settled what the present operative support order is. If this court were pressed to determine the instant enforceable order it would be inclined to rule that there is none, since there appears to be no subsequent modification of Judge Barall's approval of the 1997 agreement "suspending" child support. It would be difficult to choreograph a more inappropriate context for administrative intervention.
This court finds that the delinquency notice in this matter exceeds the authority of the Department of Social Services, is affected by error in that it invokes a support order that has been modified or suspended, that it is devoid of an evidential foundation, and that it is inappropriate in view of pending contract and tort aspects of this case. The plaintiff's objection is sustained. The court also grants the plaintiff's request for relief included in subparagraph 4a of his amended complaint limited to the first sentence which alleges inter alia that the Department of Social Services undertook administrative enforcement notwithstanding that the court has not held trial on the subject matter of the complaint. The court further grants the plaintiff's "Motion to Void Action of Family Services and Request for Trial" as to paragraph 1 which alleges that the administrative action taken by the Department of Social Services "lacks authority", paragraph 3 limited to the extent that it asserts that Judge Dranginis' decision only addresses the subject matter jurisdiction of the Superior Court and is neither a ruling determining support nor an order of enforcement, and paragraph 9 as it pertains to the delinquency notice and income withholding. The delinquency notice is dismissed and the court orders that any income withholding issued pursuant to said notice is abated immediately. This ruling does not preclude the support enforcement division from maintaining this matter in its system or from seeking judicial enforcement once the Superior Court determines arrearages and support orders. In fact since the defendant mother filed a valid application for IV-D services, the matter becomes and remains a IV-D case by definition and the support enforcement division lacks authority to decline. General Statutes §§ 17b-179 (h), 46b-231 (b) (13), 46b-231
(s)(1). As to the plaintiff's remaining claims, this division takes no present position and as subsequently stated, refers the matter to the Superior Court.
Significant additional action has occurred subsequent to the filing of CT Page 5085-ij the delinquency notice. On August 27, 1999, the plaintiff father filed an Amended Complaint consisting of some sixteen pages and thirty numbered paragraphs and subparagraphs and nine appended exhibits. The entire submission exceeds one hundred pages. It includes for the first time in this case the New York separation agreement and ratification agreement (Exhibit B). It also includes a purported agreement dated February 8, 1998 regarding custody, visitation and support of the minor children. The agreement purports to reassign custody of the children on a split custody and shared custody basis. It generally would place Natalie's primary residence with the father and Alison with the mother subject numerous exceptions and contingencies. Although the plaintiff repeatedly refers to this agreement as a modification, see eg. amended complaint paragraphs 6c and 11, it was not previously filed with the Superior Court and bears no indication of approval by any court.
The significant substantive issues of this case remain pending trial. The plaintiff's complaint, the defendant's counterclaim and the motion for support are all yet unresolved. The various contract and tort claims have not yet been addressed. Many of these issues extend well beyond the jurisdiction of the Family Support Magistrate Division. These issues are interwoven and interrelated. Years of piecemeal solutions have not produced a resolution of these disputes. In this court's opinion, the time is long since passed for a comprehensive and final conclusion to this case. Such a finale can not be generated by this division or by the parties engaging in self-help and certainly not by an administrative agency. A culmination can only be fashioned by the Superior Court. Accordingly, this case is referred to the Superior Court for trial by a judge.
In order to expedite this litigation, this court relates the following observations and recommendations to the trial court:
 (a) The court appointed counsel for the minor children has been apparently inactive in this matter since the agreement of January, 1997 was promulgated. The involvement of the children's counsel should be reinstated and should be included in "all matters pertaining to the interests of [the children]" as provided in General Statutes § 46b-54 (c).
 (b) Although both parties were represented by counsel for much of the five years of this dispute, in late 1999 counsel for each was allowed to withdraw his/her appearance and was replaced by pro se CT Page 5085-ik appearances in lieu thereof. The parties should each determine whether they intend to continue pro se or retain new counsel which determination should be made well in advance of trial so as not to invite any further delays.
 (c) It is time for a comprehensive final conclusion to this case. It is recommended that unless the parties reach written agreement approved by the Superior Court that would achieve a final judgment as to all issues, that the Superior Court try the matter to judgment on all issues and that the trial court retain jurisdiction pursuant to General Statutes § 46b-4.
 (d) This court has previously noted that the Superior Court is also designated as a "tribunal" and shares concurrent jurisdiction with this division over UIFSA. Either party may invoke remedies provided under UIFSA, particularly registration of the order pursuant to General Statutes § 46b-213g et seq., 46b-213o et seq. and/or 46b-213w (k). In order to do so, the party seeking registration should file the documentation set forth in General Statutes § 46b-213h. It is noted that there is no requirement that any party be a resident of a foreign state — the fact that the initial judgment was issued by a foreign tribunal is sufficient to allow utilization of UIFSA registration. Furthermore (unlike URESA) the party may directly register without a transmittal from a foreign court. In view of this referral, it is strongly recommended that notwithstanding some language in the cited sections to the contrary, that any filing under UIFSA be directly with the Superior Court clerk under the present docket number consistent with General Statutes § 46b-4, 46b-212b and 46b-213w (m)(2) (which provides that "if there is an existing action . . . the claim shall be filed in that action.")
 (e) If the trial court elects to consider General Statutes § 46b-70 et seq. as the basis for any judgment, it should resolve any conflict between the decisions of Judge Santos and Judge Dranginis. As CT Page 5085-il previously noted, neither party under their present pleadings invokes § 46b-70. In that other remedies have been requested and are more clearly available, it is recommended that the domestication statute not be utilized.
 (f) The court should articulate the term "suspended" as utilized in the January, 1997 agreement approved by the court, determine what amount of support should be charged, and calculate arrearages. It is recommended that the court enter a clear, unconditional order for payment on found arrearages and issue an income withholding order to enforce such order.
 (g) The court should determine the legal effect of the 1998 agreement which purports to modify the judgment. Since the agreement appears to never have been submitted to or approved by a court, it is recommended that the modification not be recognized as to the family aspects of this case. The court must also determine whether the agreement may be valid under contract theory.
 (h) The court should adjudge the remaining family, contract and tort issues and enter a final judgment.
For the reasons herein stated, this court vacates and dismissed the delinquency notice. The case is referred to the Superior Court for trial of all other issues before a judge or a judge trial referee.
BY THE COURT
 Harris T. Lifshitz Family Support Magistrate